## GILLESPIE v. FULLER CONST. CO.
### No. 1651—6101.

Commission of Appeals of Texas, Section A.
June 23, 1933.

William H. Clark, Jr., J. P. Rice, and Clark & Clark, all of Dallas, for appellant.

F. J. Scurlock, of Dallas, and W. H. Graham, of Houston, for appellee.

HARVEY, Presiding Judge.

In this case, the Court of Civil Appeals for the Fifth District has, of its own motion, submitted the following certificate containing certified questions:

"With a paving certificate, issued by the City of Dallas, as a basis, appellee, Fuller Construction Company, recovered judgment in a district court of Dallas County in the sum of $2,012.58, with interest thereon from October 25, 1926, at the rate of seven per cent. per annum, and the additional sum of $250 attorney fee against appellant, A. C. Gillespie, together with the foreclosure of a paving lien on appellant's real property abutting on the street paved. An appeal was duly perfected, the cause regularly submitted and is pending for decision in this court.

"Statement.

"On February 9, 1926, the City of Dallas, a municipal corporation, by resolution duly passed and approved by the mayor, ordered the improvement of Live Oak Street, a public street in said City, in the following manner: (a) that said street should be cut or filled so as to bring same to grade, and (b) that the street should be paved from curb to curb with one of three designated materials, and with concrete curbs or gutters installed on each side of the street, where adequate curbs and gutters were not then installed.

"After the passage of the resolution all of the necessary steps to carry into effect the order for paving Live Oak Street, and to fix a debt against the property owners whose property abutted on said street, as well as a lien against the property to pay the cost of the paving, was taken by the city in accordance with the provisions of the city charter. One of the materials, designated in the resolution that could be used for the paving of the street, was Uvalde rock asphalt, on a six inch concrete base. The bid of appellee to construct the pavement out of such material was accepted and the pavement was laid on Live Oak Street by appellee, under the supervision of the City Engineer, and in accordance with the specifications and requirements of the paving contract entered into with the City of Dallas.

"At the proper time in the proceedings for the improvement of said street, assessments were duly levied against the abutting property owners, in the manner provided by the Dallas city charter, and each property owner, including appellant, was duly notified in writing, and through advertisement in a daily newspaper, of such assessment, and also of the time and place for hearing protests by property owners. After this hearing, which closed May 12, 1926, an ordinance was duly passed fixing a personal debt against appellant in the sum of $2,012.58 for the paving of the 186 feet abutting on his property, and fixing a lien against such property to secure payment of same.

"The paving certificate, issued by the City to appellee, conforms to the provisions of the city charter authorizing the issuance of such certificates, and contains all of the necessary recitals to make it, prima facie, a valid and subsisting claim against appellant and in favor of appellee. The certificate, among other things, provided for the discharge of the indebtedness by payment in six equal annual installments, but further provided that if default be made in any of the installments the holder of the certificate could declare all unpaid installments due. The indebtedness bore interest at the rate of seven per cent. per annum. Appellant defaulted in the payment of the first and second installments and appellee declared all installments due and instituted this suit before limitation had run on any installment.

"Appellant became the owner of his property on Live Oak Street in 1910. The City of Dallas duly caused a portion of said street to be improved with bitulithic pavement in 1912, levied an assessment against appellant for his proportionate costs of such paving, and fixed the same character of lien on the same property as that which appellee now claims for the amount assessed against appellant. Appel-

lant paid this indebtedness and the lien against the property was released. This paving was in good repair in February, 1926, at the time the paving in question was ordered, was adequate for any use of said street, and was in such condition of repair when appellee destroyed it for the purpose of laying the new pavement. There were only two city blocks, or relatively a small part of that portion of Live Oak Street paved in 1926, that had been paved in 1912.

"In 1925 the City of Dallas, in the exercise of its charter powers, widened Live Oak Street by taking, through condemnation proceedings, from the property owners on the opposite side of the street from appellant's property, a strip of land ten feet wide. Appellant was not a party to the condemnation proceedings, for no part of his land was taken for such purpose, but he was assessed, on the ground of benefit to his property, the sum of $2,549.25 as his proportionate share in payment to the property owners whose property was actually taken, and this assessment was duly paid by appellant. The pavement of 1912 in front of appellant's property was 35 feet wide and the crown of the street was fixed at said time along the center of this 35 feet. When the street was widened in 1925, there was left ten feet on the opposite or North side of the street from appellant's property unpaved. The specifications prepared by the Engineer for the 1926 pavement required pavement, 45 feet wide in front of appellant's property, so as to include the ten feet unpaved. The concrete gutter placed in front of appellant's property by the 1912 pavement was in good condition and adequate for its purpose.

"The grade of the street was unchanged from the grade established in 1912, by the 1926 paving. The City Engineer directed the tearing up and destruction of the 1912 pavement and gutter in front of appellant's property and the laying of new pavement on the same grade of the street, and a new gutter in the same place of the old gutter. The grounds on which the City, through its Engineer, seeks to justify the act of destroying the 1912 pavement and taxing appellant in the form of a special assessment for the new pavement, are that, unless such repaving was done, the crown of the pavement, as fixed in 1912, would not be in the center of the widened street, would not conform to the crown of the new pavement as same had to be established on other portions of Live Oak Street, and would thereby destroy the equal drainage on the sides of the street. No reason appears for the destruction of the old gutter. The destruction of the pavement and gutter in front of appellant's property was done over his protest.

"Appellant, both in his pleading filed in his answer to appellee's suit and by assignments of error and propositions of law in his brief, contends that, by reason of the above existing facts, he had such a property interest in the pavement of 1912 that it could not be taken or destroyed, except through the proper exercise of the powers of Eminent Domain resting in the City, and as the City did not exercise such powers, but took and destroyed his property under its police or taxing powers, all of the proceedings as against him, from the adoption of the resolution to the attempted fixing of the debt and lien against him and his property, were void, and that he was not required to take any notice thereof.

"Section 1 of Art. 10 of the Dallas city charter defines the term 'street improvements' to include 'the improvement of any street, alley, avenue, highway, public place or square, or any portion thereof, within the City, by filling, grading, raising, macadamizing, remacadamizing, paving, repairing, or otherwise improving the same, or by construction, or re-construction of sidewalks, curbs, gutters, or repairing the same, * * * and said terms shall also include any other street improvement of a public nature and for a public benefit.'

"Subdivision (b) of sec. 1 of Art. 10 of the Dallas city charter vests in the Board of Commissioners powers to order the improvement of any public highway, or part thereof, in the City of Dallas, and describes the nature and extent of such improvement.

"Subdivision (c) of sec. 1 reads:

" 'The Board of Commissioners shall have power to cause sidewalks, curbs and gutters to be constructed, reconstructed, or repaired, under the terms of this article and the various subdivisions thereof, either separately or together with other improvements; provided, that the cost of constructing, reconstructing or repairing sidewalks shall be borne entirely by the owners of the property abutting upon such sidewalks; and provided, that the right of the Board of Commissioners to order the construction, reconstruction or repair of such sidewalks, curbs and gutters under the terms of this article and the various subdivisions thereof, shall be exclusive of and in addition to the powers hereinafter in this charter conferred upon such Board of Commissioners to order such improvements.'

"The applicable portion of subdivision (j) of sec. 1 reads:

" 'At any time within ten days after the hearing herein provided for has been concluded, any person or persons having an interest in any property which may be subject to assessment under this act, or otherwise having any financial interest, in such improvement or improvements, or in the manner in which the cost hereof is to be paid who may desire to contest on any ground the validity of any proceeding that may have been had with reference to the making of such improvements or the validity in whole or in part of any as-

sessment or lien or personal liability fixed by said proceedings, may institute suit for that purpose in any court of competent jurisdiction. Any person who shall fail to institute such suit in said period of ten days, or who shall fail to diligently prosecute such suit in good faith to final judgment, shall be forever barred from making any such contest or defense in any other action and this estoppel shall bind their heirs, successors, administrators and assigns. The City of Dallas and the person or persons to whom the contract has been awarded shall be made defendants in such suit, and any other proper parties may be joined therein.'

"In view of the provisions of section 17 of article 1 of the state Constitution, and the Dallas City Charter provisions above referred to, this court deems advisable to certify to the Supreme Court the following questions:

"Question No. 1: Did appellant have such a property interest in the pavement, laid in front of his property in 1912, as that such interest could not be taken or destroyed by the City of Dallas, or under its direction, without payment to him of due compensation?

"Question No. 2: If question No. 1 be answered in the affirmative, is appellant estopped to recover by cross action in this suit the value of his interest in the 1912 pavement, because of the provisions of subdivision (j), sec. 1, Art. 10, of the Dallas city charter, requiring suits, contesting the validity of an assessment for street improvements, to be filed within ten days from date of the closing of the hearing, more than two years having elapsed from such date to the filing of the answer setting up such cross action in this suit?

"Briefs of the parties accompany this certificate. Appellee's brief contains all the charter provisions relating to street improvements. See pages six to nine, inclusive."

It appears that, in submitting the questions certified, the Court of Civil Appeals proceeds upon the assumption that, if Gillespie had such a property interest in the old pavement as entitled him to compensation for its destruction by the city, then the destruction of said pavement, at the instance of the city, was an unlawful invasion of the property rights of Gillespie, for which the appellee would be responsible, unless an estoppel as inquired about has risen. In such a situation an answer to the questions certified should be refused, for the reason that any answer made would give rise to implications concerning a law question of chief importance in the case which we are not called on to decide.

We recommend that the certificate submitted be dismissed, and, since neither party resisted in any way the submission of said certificate, we further recommend that each of the parties be taxed with one-half of the costs incurred in the Supreme Court.

CURETON, Chief Justice.

The opinion of the Commission of Appeals is adopted, and the certificate dismissed.